# In the United States Court of Federal Claims

No. 12–366 C
(E-Filed: June 26, 2014)

|  |  |
|---|---|
| KELLOGG BROWN & ROOT SERVICES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Motion for Protective Order; discovery; document request; RCFC 26(c)(1); good cause; relevancy; overbroad; undue burden; cumulative; duplicative; timeliness; government contract |

Daniel L. Russell Jr., Washington, D.C., for plaintiff.  Raymond B. Biagini, Herbert L. Fenster, Jason N. Workmaster, and Alejandro L. Sarria, Washington, D.C., of counsel.

J. Reid Prouty, Senior Trial Counsel, with whom were Stuart F. Delery, Assistant Attorney General, and Bryant G. Snee, Director, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

OPINION AND ORDER

CAMPBELL-SMITH, Chief Judge

The United States government (government or defendant) has filed a Motion for Protective Order, pursuant to Rule 26 of the Rules of the United States Court of Federal Claims (RCFC), seeking to be relieved of the duty to respond to plaintiff's Document Requests Nos. 3 and 4 of its Third Request for Production of Documents.  Def.'s Mot. Prot. Order (Def.'s Mot.), Nov. 14, 2013, ECF No. 37, at 1.  Defendant argues the requests are outside the scope of discovery, are untimely, and are irrelevant to determining the ultimate issue in the litigation—that is, whether the Award Fee Determining Officer's decision to issue a zero award fee was arbitrary and capricious and in breach of the parties' agreement.  See id.

In addition to defendant's motion, the court also considers Defendant's Appendix (DA), filed November 14, 2013, ECF No. 37–1; Plaintiff's Opposition to Defendant's Motion for Protective Order (Pl.'s Opp'n) and Plaintiff's Appendix (PA), both filed

December 2, 2013, ECF Nos. 40, 40-1; Defendant's Reply to Plaintiff's Opposition (Def.'s Reply), filed December 12, 2013, ECF No. 41; Plaintiff's Supplemental Brief (Pl.'s Suppl. Br.), filed February 21, 2014, ECF No. 46; Defendant's Response to Plaintiff's Supplemental Brief (Def.'s Suppl. Br.), filed February 25, 2014, ECF No. 48; and Transcript of Status Conference (Transcript), held April 14 and filed April 23, 2014, ECF No. 60.

For the reasons set forth herein, defendant's motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

I.      Background

        A.      The LOGCAP III Contract

On December 14, 2001, the United States Army awarded Contract No. DAAA09-02-D-0007 (the LOGCAP III Contract or the Contract) to Kellogg Brown & Root Services, Inc. (KBR or plaintiff) to provide a broad range of support services.  See Compl. ¶¶ 3–4, 11–12.  In relevant part, starting March 2003, Task Orders (TOs) 139 and 151, issued under the Contract, directed KBR to provide "logistical services" for Operation Iraqi Freedom including, but not limited to, laundry services, convoy support operations, dining services, facilities construction, facilities management, and operations and maintenance (O&M) services.  Compl. ¶¶ 12–14.

Under the LOGCAP III Contract—specifically its "H-36 Award Fee Clause" or "Clause H-36"—KBR was eligible for periodic award fees based on performance under each task order.[1]  Compl. ¶ 22; see Clause H-36, ECF No. 6–2, at ¶¶ a, c.  During each evaluation period, KBR was monitored by an Award Fee Evaluation Board (AFEB). Clause H-36 ¶ b.  KBR, the Defense Contract Audit Agency, and the Defense Contract Management Agency also had an opportunity to submit presentations to the AFEB regarding KBR's performance and progress.  Compl. ¶ 23.  The AFEB would then evaluate KBR's performance by assigning adjectival ratings (Excellent, Very Good, Good, Average), which corresponded to numerical ratings from zero to 100, for the following factors:  technical performance, cost performance, and management.  Id. at ¶¶ 24–26.  The AFEB would then make its recommendation to the Award Fee Determining Officer (AFDO) who, in turn, was empowered to either "accept the AFEB's recommendations or make a unilateral determination on the payable award fee."  Clause H-36 ¶ b.

On June 18–22, 2008, the Army held an AFEB to evaluate KBR's performance under TOs 139 and 151 of the LOGCAP III Contract, for the evaluation period of January 1, 2008 through April 30, 2008.  Compl. ¶ 46.  The AFEB rated KBR's overall

---

[1]     Defendant submitted a copy of the Contract's "H-36 Award Fee Clause" as Exhibit 2 to its previously filed Motion to Dismiss, ECF No. 6.

performance under TO 139 as 92 (out of 100) and under TO 151 as 95 (out of 100), Compl. ¶ 50, which translated to performance ratings of "Excellent," see Clause H-36 at ¶ m.  Yet, on February 19, 2010, the AFDO issued a zero award fee determination out of the possible $24,131,157 award fee pool for TO 139 and the possible $1,291,942 award fee pool for TO 151.  DA 16–17 (AFDO's Final Decision, dated Feb. 19, 2010).  The AFDO attributed his denial of the performance award to:  (i) "KBR's failure to document the poor conditions of the electrical systems at the Radwaniyah Palace Complex;" (ii) "KBR's failure to provide notice of unsafe life, health, and safety conditions;" and (iii) "KBR's failure to employ qualified personnel to provide electrical services."  DA 16.

On December 1, 2011, KBR appealed the AFDO's determination by submitting a certified claim to the Contracting Officer (CO), seeking $21,432,108.80 in breach of contract damages, plus interest.  Compl. ¶ 5; see also Contract Disputes Act (CDA), 41 U.S.C. § 7103(a), (b) (2006) (claim process).  On March 12, 2013, the CO issued his final decision denying KBR's certified CDA claim in its entirety.  Compl. ¶¶ 6, 9.  The CO found "'that the AFDO's award fee determination was made in accordance with the terms of the contract and applicable law, and that no adjustment to the award fee . . . [was] warranted for the period in question.'"  Compl. ¶¶ 9, 69 (purporting to quote the CO).  KBR asserts that, with the exception of the February 2010 denial at issue in this case, it has received award fees for its performance consistently from 2003 through 2011.  See Pl.'s Status Conference Presentation, Apr. 14, 2014, at 3 (not available on ECF).

B.     Breach of Contract Action

Pursuant to CDA § 7104(b)(1), KBR filed its breach of contract complaint against the government on June 8, 2012, challenging the final decision of the CO.  See Compl. at *1 (introductory paragraph).  Plaintiff avers that "the Army breached the LOGCAP III Contract by awarding KBR [a] zero award fee on TOs 139 and 151 for the evaluation period of January 1, 2008 to April 30, 2008."  Compl. ¶ 7.  Plaintiff contends that the zero award fee decision was "based on fundamentally inaccurate information."  Compl. ¶ 7.  For example, plaintiff believes that it was blamed improperly for the fatal electrocution of a soldier in a shower, a death that was attributed to faulty electrical wiring for which plaintiff bore no responsibility.  See Pl.'s Opp'n 9–13.  KBR asserts that senior government officials inappropriately pressured the CO into denying the fee award and subsequently the CO abandoned the performance award criteria and process expressly set forth in the Contract.  Id. at 12.  As a result, plaintiff complains, the AFDO and CO abused their discretion when they denied the award fee and, thereby, effected a breach of contract.  Id. at 12–13.

C.     Discovery Dispute

In May 2013, the court ordered the government to provide KBR with "copies of all documents provided to James Loehrl [(the AFDO)] for consideration of the award fee

at issue in this case," as well as "all documents created by Mr. Loerhl setting forth and justifying his award fee decision in this case." May 13, 2013 Order, ECF No. 22.  The court also directed the parties to "confer about the completeness of this document production and the scope of further discovery necessary to advance this case." Id. Thereafter, the parties agreed to a limited scope of additional discovery to be completed within approximately three months, by September 20, 2013.  June 23, 2013 Joint Status Report (JSR), ECF No. 23, at 1; see also June 25, 2013 Order, ECF No. 24 (approving JSR).  The parties agreed to a further exchange of material concerning "the nature of the discretion afforded to the AFDO under Clause H-36." June 23, 2013 JSR at 1.  These materials were to include any "contemporaneous understandings of the clause when it was negotiated and later amended." Id. at 2.  The parties also agreed to explore "whether the AFDO properly exercised his discretion," through the government's production of documents and emails to or from the AFDO, or to or from the CO, regarding the denial of the fee award. Id. at 1–2.

Plaintiff then served two rounds of document requests before the agreed discovery deadline of September 20, 2013.  See DA 24–34 (First Request for Production of Documents, dated June 28, 2013); DA 25–43 (Second Request for Production of Documents, dated Aug. 16, 2013).  After discovery closed, but while defendant's request for discovery extension was still pending, see Sept. 20, 2013 JSR, ECF No. 35, at 1–2, plaintiff served a Third Request for Production of Documents, which posed four document requests (Document Requests Nos. 1–4), see DA 1–10 (dated Oct. 23, 2013).

In the motion for protective order presently before the court, defendant seeks to avoid responding to all four document requests on the grounds they were untimely. Def.'s Mot. 3–4.  Should the court find the requests were timely, however, then defendant has no further objection to responding to Document Requests Nos. 1 and 2, id. at 5 n.2, but it does offer alternative grounds for avoiding Document Requests Nos. 3 and No. 4. Defendant contends that these latter requests, in addition to being untimely, seek material outside the scope of discovery to which the parties have agreed and the court has adopted; are overbroad; and would impose an undue burden. Id. at 4–10.

Plaintiff contends that, notwithstanding the expiration of the discovery deadline, discovery efforts are ongoing and, thus, plaintiff's most recent document requests cannot be deemed untimely. Pl.'s Opp'n 13.  Plaintiff further contends that Document Requests Nos. 3 and 4 are "plainly within the scope of discovery" and "should have been produced . . . months ago." Id. at 4 (emphasis and capitalization omitted).

The court is satisfied that the government and KBR conferred in good faith in an effort to resolve the dispute before filing the instant motion. See RCFC 26(c)(1) (good faith requirement).  The government included a certification in its motion, see Def.'s Mot. 1, as well as copies of the parties' pre-motion correspondence evidencing an attempt to resolve the discovery dispute before filing the motion, see DA 11–12 (letter from

government counsel to plaintiff's counsel, dated Oct. 31, 2013); DA 13–15 (plaintiff counsel's response, dated Nov. 5, 2013).

II.     Legal Standard

"A party or any person from whom discovery is sought may move for a protective order." RCFC 26(c)(1). If "good cause" exists, "the court may . . . issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Id.

"[T]he party seeking the protective order bears the burden of showing good cause." Forest Prods. Nw., Inc. v. United States, 62 Fed. Cl. 109, 114 (2004) (citing Capital Props., Inc. v. United States, 49 Fed. Cl. 607, 611 (2001)), aff'd, 453 F.3d 1355 (Fed. Cir. 2006). "Good cause requires a showing that the discovery request is considered likely to oppress an adversary or might otherwise impose an undue burden." Forest Prods. Nw., Inc., 453 F.3d at 1361; see also In re Violation of Rule 28(d), 635 F.3d 1352, 1358 (Fed. Cir. 2011) (illustrating that "good cause" warranting limitations on disclosure under similarly-worded Fed. R. Civ. P. 26(c)(1), often mandates a showing of a "specific prejudice or harm [that would] result [without] a protective order"); Black's Law Dictionary 623 (5th ed) (defining "good cause" simplistically as a "substantial reason, one that affords a legal excuse").

"[B]road allegations of harm, unsubstantiated by specific examples, are insufficient to justify issuance of a protective order." Lakeland Ptnrs, L.L.C. v. United States, 88 Fed. Cl. 124, 133 (2009). As this court has explained, to prevail on an objection to allegedly burdensome discovery:

> [T]he objecting party must do more than simply intone [the] familiar litany that the [discovery sought is] burdensome, oppressive, or overly broad. The objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded to the federal discovery rules, each [request] is not relevant or how each question is overly broad, [unduly] burdensome, and/or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.

Id. at 133 n.6 (internal quotation marks omitted) (some alterations in original).

In deciding whether to limit discovery, a trial court may "consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truth seeking function' in the particular case before the court." Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. 2002) (quoting Rowlin v. Alabama, 200 F.R.D. 459, 461 (M.D. Ala. 2001) (interpreting judicial discretion under similarly worded Fed. R. Civ. P. 26(b)(2)). For example, Rule 26(c)(1) contemplates limiting discovery to avoid

"annoyance, embarrassment, oppression or undue burden or expense." Similarly, Rule 26(b)(2)(c) authorizes the court to impose limits if: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery to obtain the information sought; or (iii) the burden or expense outweighs the likely benefit. The Supreme Court has further opined that "discovery, like all matters of procedure, has ultimate and necessary boundaries. . . . [L]imitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege." Hickman v. Taylor, 329 U.S. 495, 507–08 (1947).

Ultimately, whether to issue a protective order is subject to the broad discretion of the trial court. Florsheim Shoe Co., Div. of Interco, Inc. v. United States, 744 F.2d 787, 797 (Fed. Cir. 1984); compare Lakeland Partners, LLC, 88 Fed. Cl. at 139 (denying request for protective order because government failed to show a particularized harm when extensions for the limited discovery were granted), and AG-Innovations, Inc. v. United States, 82 Fed. Cl. 69, 86 (2008) (denying motion for protective order for finite set of documents and depositions that could easily and readily be obtained), with Pac. Gas & Elec. Co. v. United States, 69 Fed. Cl. 323, 325-26 (2005) (holding that the burden on the government outweighed the benefit to plaintiff, who was ordered to narrow discovery requesting all documents "related to" all matters associated with nuclear spent fuel); and St. Matthew Publ'g., Inc. v. United States, 41 Fed. Cl. 142, 147 (1998) (granting the government's motion for protective order on grounds of undue burden and duplicative information as weighed against the minimal likelihood that further discovery was reasonably calculated to lead to newly admissible evidence).

The court has a variety of options should it find a motion for protective order is warranted, including: (i) "forbidding the disclosure or discovery;" (ii) "specifying terms, including time and place, for the disclosure or discovery;" and (iii) "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." RCFC 26(c)(1)(A), (B), (D).

III.   Discussion

The court now proceeds to determine whether any of the document requests warrant a protective order. For the reasons stated below, the court finds that defendant must respond to Document Requests Nos. 1 and 2, but defendant is entitled to a protective order with respect to Document Requests Nos. 3 and 4.

A.      Document Requests Nos. 1 and 2 Must Be Answered

Although plaintiff's Third Request For Production of Documents was served October 23, 2013, see DA 1–10, a month after the close of discovery on September 20, 2013, see June 25, 2013 Order 1, the technical untimeliness is not dispositive. In

practice, both parties treated the discovery deadline as elastic.  Defendant informally requested a discovery extension in a status report filed on the same day discovery closed.  See Sept. 20, 2013 JSR at 1–2.  Plaintiff scheduled depositions for three months after discovery closed, in December 2013.  Pl.'s Opp'n 13 (noting same).  In light of these actions, contrary to the approved discovery scheme, the court will deem the requests timely filed.  Furthermore, given that defendant's only objection to Document Requests Nos. 1 and 2 was based on timeliness, Def.'s Mot. 5 n.2, a protective order is denied with respect to those requests.

> B.      Document Request No. 3 Warrants a Protective Order

Document Request No. 3 seeks "[a]ll documents related to the Government's creation, receipt, circulation, exchange, response to or use of the 2006 presentation."  DA 8.  The government already produced to plaintiff the 2006 presentation—titled "Sub-standard Electric Wiring Conditions," prepared by Lt. Col. Brent Carey (PA 16–32)—because it was one of the materials provided to the AFDO for consideration in reaching his award fee decision.  Pl's Opp'n 4; see also May 13, 2013 Order (directing the government's production of all material provided to the AFDO for consideration in the fee decision).  As set forth below, however, plaintiff's further request for "all documents related to" the 2006 presentation seeks only potentially, marginally relevant information that is deserving of a protective order.

> 1.      Document Request No. 3 Is Unreasonably Cumulative and Duplicative

Plaintiff argues that additional discovery of "all documents related to" the 2006 presentation would "provide further evidence that the AFDO abused his discretion by issuing a [zero award fee] decision that ran counter to the evidence before the agency and failed to consider an important aspect of the problem."  Pl.'s Opp'n 5 (internal citation and quotation omitted).  Plaintiff submits that the material will show the government had prior notice of electrical deficiencies in Iraqi buildings, as early as 2006, and allegedly chose to accept those risks to soldiers, rather than correct or mitigate them.  See id. at 5–6 (argument); DA 13–14 (plaintiff counsel's letter response to government, dated Nov. 5, 2013) (arguing that such material "demonstrate[s] that, long before the award fee period of evaluation . . . , the U.S. military was repeatedly warned about, and was intimately aware of, the life/health/safety risks presented by ungrounded hardstand buildings in Iraq").  As such, KBR contends, the government should not have denied KBR's performance award two years later based on KBR's alleged failure to warn of the risks and/or to correct or mitigate them.  See Pl.'s Opp'n 2–3, 5–6.

The court agrees that some of this information might be relevant to support plaintiff's abuse of discretion claim, depending on its substance and/or who handled the material.  However, further discovery of the material would be unduly cumulative and

duplicative of material already in plaintiff's possession.  See RCFC 26(b)(2)(C)(i).  For example, plaintiff already has the 2006 presentation, PA 16–32, and sworn statements and testimony from its creators Lt. Col. Brent Carey and Maj. James Harvey, see Def.'s Mot. 8; Pl.'s Opp'n 6.  Plaintiff is also aware of the extent of the prior notice because plaintiff has uncovered the identities of those to whom the 2006 presentation was circulated, including numerous senior government officials and key personnel.  See Pl.'s Opp'n 6.  In addition, plaintiff already deposed the AFDO and other senior Department of Defense procurement officials about the 2006 presentation as well as their prior knowledge, generally, of electrical deficiencies, risks, and mitigation efforts.  See Def.'s Mot. 2, 8; Pl.'s Opp'n 6–7.  Plaintiff fails to explain what new or different evidence it would expect to uncover through the additional requested discovery that (for reasons explained below) is otherwise only marginally relevant, overly broad, and unduly burdensome to produce.

2.      Document Request No. 3 Is Overbroad and Unduly Burdensome

Discovery Request No. 3 is overly broad and would be unduly burdensome to answer.  A party's right to pretrial discovery is not unfettered.  AG-Innovations, Inc., 82 Fed. Cl. at 76 ("'[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries.'") (quoting Hickman, 329 U.S. at 507)).  Pursuant to RCFC 26(b)(2)(C), a court must limit the frequency or extent of discovery upon determining that the discovery imposes an undue burden.  The burden or expense of discovery is, in turn, undue when it "outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  RCFC 26(b)(2)(C)(iii); cf. A-G Innovations, Inc., 82 Fed. Cl. at 86 (holding that a discovery request was not overly broad when it specified a finite number of documents to produce).

Based on the foregoing principles, the court agrees with defendant that plaintiff's Document Request No. 3 is overbroad, and that the task of preparing a response would impose a heavy burden on defendant.  The request seeks "[a]ll documents related to the Government's creation, receipt, circulation, exchange, response to or use of the 2006 presentation."  DA 8.  This generic request—for "[a]ll documents" having virtually any association or relation to the 2006 presentation—targets potentially massive quantities of material.  The request fails to delineate any specific custodians by, inter alia, limiting the request to one or more individuals, or even specific government entities.  Rather, the request encompasses all government entities, and all of their current and former employees who served at all levels of government (ministerial to senior executive).  Moreover, the request lacks any temporal limitation and, thus, requires the government to search, and potentially produce, at least eight to ten years of files in order to capture materials related to the presentation's initial creation in 2006 through to its present use.  The request's lack of any definitive parameters threatens to hamper, if not preclude, defendant's ability to respond in a thorough, efficient, and timely manner.

The court finds that this heavy burden outweighs any benefit of the production to plaintiff. The practical execution of Document Request No. 3 would require the government to invade an overwhelming number of computers, email accounts, and paper files from both past and present government employees and would require the government to devote substantial time and resources to the review of the material for relevancy, privilege, and security. The resulting delay in these proceedings would be significant. It would also divert the parties' attention away from the litigation, which the parties have agreed should proceed expeditiously with limited discovery. See May 13, 2013 Order 1; June 25, 2013 Order 1–2. For these reasons, Document Request No. 3, for "all documents related" to the 2006 presentation, seeks information that is potentially marginally relevant, but otherwise cumulative, duplicative, overbroad, and unduly burdensome.

C.      Document Request No. 4 Warrants a Protective Order

Document Request No. 4 seeks "[a]ll documents, emails and correspondence exchanged between Executive Branch officials (e.g., ASC, DCMA, AMC, DOD) and Members of Congress, Congressional committees or Congressional staff, aides, or employees from 2009–2010" that "relate[d] to" both KBR's "electrical work" and its "award fee." DA 8 (original request); DA 15–16 (narrowing document request).

The request seeks information outside the parties' agreed scope of discovery, which was limited, in relevant part, to material provided to the AFDO for consideration of the award fee, as well as material the AFDO may have generated in discussing and justifying his award fee decision. See May 13, 2013 Order 1. The government has already provided these materials to plaintiff. Def.'s Mot. 9. What plaintiff now seeks are communications between other government officials and employees regarding the award fee decision. The court agrees with defendant, however, that it is difficult "to see how, for example, correspondence between a Congressional staffer and a [Department of Defense] official—even if it about electrical work in Iraq—would have any relevance . . . to whether [the AFDO] abused his discretion by deciding that KBR merited a zero award fee." Id.

Plaintiff argues that the material will highlight any outside pressures imposed on the AFDO that affected his decision to deny a fee award. Pl.'s Opp'n 3, 10–11; Pl.'s Suppl. Br. 1. Plaintiff theorizes that senior-level government officials pressured the AFDO to use the award fee process to punish KBR, and to cast KBR as the scapegoat, for the electrocution deaths of Sergeant Ryan Maseth and other service members stationed in Iraq. Pl.'s Opp'n 3, 10–11; Pl.'s Suppl. Br. 1. However, there is little evidence that this correspondence—between others in government—ever reached the AFDO for consideration, let alone influenced him. See Def.'s Suppl. Br. 1 (arguing same).

Mere speculation to the contrary is not sufficient to justify the proposed discovery. See Monarch Assur. P.L.C. v. United States, 244 F.3d 1356, 1365 (Fed. Cir. 2001) (stating that "the trial court is not expected to, nor should it, simply allow plaintiffs to embark on a wide-ranging fishing expedition in hopes that there may be gold out there somewhere"); Moore U.S.A. v. Std. Register Co., 229 F.3d 1091, 1116 (Fed. Cir. 2000) (holding that the district court correctly refused to allow Moore to conduct "fishing expeditions [during discovery] in hopes of finding products that might be infringing to oppose summary judgment") (internal quotation and citation omitted); Missouri P. R. Co. v. United States, 338 F.2d 668, 672 (1964) (warning that a party may not abuse discovery as a "mere fishing expedition or a method of discouraging taxpayers from seeking refunds on meritorious claims because of the cost that would result in proving each and every item involved").

Even if the court were to overlook discovery parameters, the request would remain unduly burdensome because the burden of production far "outweighs its likely benefit, considering the needs of the case, . . . and the importance of the discovery in resolving the issues."  See RCFC 26(b)(2)(C)(iii).  As the government points out, the request "would require the [g]overnment query many thousands of current (and, for that matter, former) employees of the Department of Defense (and any other agency, like the State Department), that had any role that relates to the Iraq War." Def.'s Mot. 9.  Plaintiff has made no effort to narrow the request to specific entities or individuals.  The time and expense that would be required for such an expansive custodian search—despite the request's narrow subject area and timeframe—would impose a heavy burden on defendant.  It would also delay this litigation indefinitely given not only the time and expense to perform the search, but the myriad of objections the court is likely to receive from Congresspersons and their staffers resistant to opening their files.  Moreover, even if the search were to reveal material evidencing a general consensus among senior executives to deny a fee award, punish, or scapegoat KBR, the mere existence of such material is not synonymous with influence.  Plaintiff would still need to prove that the consensus was communicated to the AFDO and persuaded the AFDO to deny the award after succumbing to improper influence beyond the Contract.

Defendant is also correct that this request teeters on "impermissibly seek[ing] discovery on a theory of the case—that the AFDO's independent judgment was compromised—that the [c]ourt expressly dismissed many months ago."  See id.; Def.'s Reply 4; see also Opinion & Order, Feb. 22, 2013, ECF No. 14, at 14, 21 (dismissing KBR's claim for breach of the duty of good faith and fair dealing premised on the AFDO's alleged failure to exercise independent judgment when issuing a zero award fee).  A party may not seek discovery on dismissed claims. E.g., Act Now to Stop War & End Racism Coal. v. District of Columbia, 286 F.R.D. 117, 131 n. 7 (D.D.C. 2012) ("It is a basic, default rule of civil litigation that discovery may only be obtained on matters related to pending—not dismissed—claims.") (discussing the permissible scope of discovery permitted under similarly-worded Rule 26 of the Federal Rules of Civil

Procedure); Def.'s Mot. 10 (arguing same).  Plaintiff replies that the AFDO's failure to exercise independent judgment can still be offered in support of its breach claim because the contract requires the AFDO to make the fee decision, not others.  Pl.'s Opp'n 13 (citing Boeing Co. v. United States, 75 Fed. Cl. 34 (2007), in which the court awarded damages for breach of contract where an AFDO failed to exercise independent judgment in determining the amount of award fee to be paid).  Plaintiff avers that "the AFDO did not issue the zero award fee to KBR in a vacuum, but instead was bombarded for more than 18 months with emails, letters, and other documents authored by various superiors who were intent on penalizing KBR."  Pl.'s Suppl. Br. 4.  By pursuing a protective order, plaintiff argues the government is merely trying to "conceal compelling evidence that the zero award fee decision reflects the judgment of countless government officials other than the AFDO."  Id. (emphasis omitted).  The court will not preclude KBR from offering evidence of improper influence as a basis for breach of contract, but it will not re-open discovery and indefinitely delay this litigation, so that KBR can pursue its theory of improper influence.  The scope of discovery sought is too broad, and the likelihood of uncovering relevant evidence too narrow, to divert the parties' efforts to this path.

IV.    Conclusion

  Defendant's motion for a protective order is **GRANTED-IN-PART** and **DENIED-IN-PART**.  Defendant shall produce documents in response to plaintiff's Document Requests Nos. 1 and 2 within thirty days, but shall have no obligation to respond to Document Requests Nos. 3 and 4, for which a protective order is hereby issued.

  IT IS SO ORDERED.

      s/ Patricia Campbell-Smith

     PATRICIA CAMPBELL-SMITH
     Chief Judge